UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEN ABBOTT & ASSOCIATES, PLLC | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:20-cv-00463-M |
| ACCIDENT INJURY LEGAL CENTER | § § § | |
| *Defendant.* | § § | |

### DEFENDANT'S REPLY IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFF'S PETITION

Date: April 6, 2020

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANT ACCIDENT INJURY LEGAL CENTER**

## I. REPLY ARGUMENT & AUTHORITIES

Abbott seeks to extend protection for its alleged trademarks well-beyond the scope of what Texas common law and the Lanham Act allow. The Court should dismiss Abbott's trademark claim because it is well-established by both this Court and courts across this country that the mere bidding on trademarked terms to generate internet search results – which is the sole basis for Abbott's claim – is not actionable as a matter of law. *See, e.g., Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. Of Am., Inc.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) ("Virtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability."); *see also* Dkt. 8 at 2-3 (citing cases). Indeed, *this* Court has itself refused to enjoin a defendant from keyword bidding even after a jury finding of willful infringement. *See Mary Kay v. Weber*, 661 F.Supp.2d 632, 646 (N.D. Tex. 2009) (Fish, J.). Tellingly, Abbott does not cite a single case that supports its position that bidding on trademarked terms, by itself, can support a claim for trademark infringement. Abbott's infringement claim should be dismissed with prejudice.

This Court should also dismiss Abbott's tortious interference claim because Abbott fails to plead facts that show (1) a reasonable probability that Abbott would have entered into contractual relationships with any of the internet users that Abbott claims were its prospective clients, and (2) that AILC engaged in any act that was independently tortious. Both of these missing elements are necessary to sustain a claim for tortious interference with prospective business relationships. Accordingly, Abbott's tortious interference claim should also be dismissed with prejudice.

### A. Abbott Asks This Court to Apply the Wrong Standard at the Motion to Dismiss Stage.

As an initial matter, Abbott misses the mark regarding the legal standard for a motion to dismiss under Rule 12(b)(6). While Abbott urges the Court to "tak[e] all evidence in the light most favorable to the plaintiff," Dkt. 9 at 6, that summary judgement standard is inappropriate at the

motion to dismiss stage. Instead, under the Rule 12(b)(6) standard, the Court may not look beyond the four corners of the plaintiff's pleadings. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). Thus, while Abbott attempts to flesh out its allegations through its Response, this Court must only consider the allegations (or lack thereof) contained in Abbott's Petition for the purposes of AILC's Motion to Dismiss.

Additionally, Abbott incorrectly argues that its claims should survive the motion to dismiss stage and proceed to trial simply as a matter of due process.[1] *See* Dkt. 9 at 5-6. However, it is axiomatic that a plaintiff is not entitled to proceed beyond the motion to dismiss stage unless it pleads, and alleges facts to support, each and every element of his asserted claims for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to plead the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). Abbott has not, and cannot, met this burden on any of his claims, and therefore dismissal of his Petition with prejudice is appropriate at this stage.

**B. Bidding on Abbott's Name as a Marketing Keyword, Without More, is Not Actionable Trademark Infringement.**

Abbott's trademark infringement claim fails as a matter of law because Abbott does not allege any facts to support the requisite "likelihood of confusion" element. "To prove infringement, a plaintiff must show that the defendant's use of the mark 'creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product or service at issue.'" *Alliance for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 508 (5th Cir. 2018)

---

[1] In support of this misguided argument, Abbott incorrectly claims that "most if not all of the cases cited [in AILC's Motion to Dismiss] were heard by appellate courts after the plaintiffs had an opportunity to present their evidence at trial." Dkt. 9 at 5. This claim could not be further from the truth. To the contrary, even a cursory review of AILC's Motion reveals that the the vast majority of the cases that AILC and relies upon are district court opinions, not appellate opinions, that were issued either at the motion to dismiss, injunctive relief, or summary judgment stage.

(quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)). "The required showing is a '*probability*' of confusion, not merely a 'possibility.'" *Alliance*, 901 F.3d at 508 (emphasis added); *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018). Moreover, courts across the country have consistently held that there can be no likelihood of confusion where the resulting advertisement does not contain the trademark in question. *See* Dkt. 8 at 5-6 (citing cases).

Here, Abbott's Petition does not include any allegation that the AILC's resulting webpage or advertisements include Abbott's alleged trademarks. In fact, Abbott admits that when AILC's website shows up in search engine results, "[t]he client or prospective client sees 'Accident Injury Legal Center'" rather than Abbott's trademark. Dkt. 9 at 7. Abbott then speculates that a person searching for Abbott "may very well assume that Abbott used this name for Abbott's site, and that by clicking the link for 'Accident Injury Legal Center,' it would be directed to Abbott's website." *Id*. This unsupported conjecture falls far short of Abbott's burden to plead facts that support a *probability* of confusion, and not a mere *possibility*, in order to establish a claim for trademark infringement. *See Alliance*, 901 F.3d at 508. Abbott's speculation also falls short of a plaintiff's general burden to show more than a "sheer possibility that a defendant has acted unlawfully" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Under these basic pleading standards, Abbott has failed to plead the requisite element of the likelihood of confusion to support his trademark infringement. Moreover, under the overwhelming weight of case law, Abbott's allegations of mere bidding on a trademark cannot

support a likelihood of confusion as a matter of law. Consequently, Abbott's trademark infringement claim should be dismissed with prejudice.

**B. The Cases Abbott Cites are Inapplicable or Undermine Its Position.**

The authorities Abbott cites in its muddled analysis of the likelihood of confusion are generally inapplicable and, in certain instances, contradictory to Abbott's position. Generally, when a protected mark is used in advertisement, the court considers the "digits of confusion" in assessing whether the advertisement "creates a likelihood of confusion as to affiliation or endorsement." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d at 857. However, Abbott does not allege that AILC has actually *used* any of Abbott's alleged marks in AILC's advertisements or website. In fact, Abbott admits that AILC's website clearly identifies Accident Injury Legal Center as the sponsor of the content. Dkt. 9 at 7 ("AILC's website showing up at the very top of the search engine results[ and] [t]he client or prospective client sees "Accident Injury Legal Center'"). Because AILC does not use any portion of Abbott's marks in its ads, there is no need for this Court to engage in the digits of confusion analysis to find that there is no likelihood of confusion as a matter of law.

Abbott primarily relies on *College Network, Inc. v. Moore Educ. Publishers, Inc*., which actually supports dismissal of Abbott's trademark infringement claim. In *College Network*, the jury rendered a verdict finding no trademark infringement from defendant's purchase of the trademarked term "The College Network" as a search engine keyword for sponsored-link advertising. *College Network, Inc. v. Moore Educ. Publishers, Inc*., 378 Fed. App'x 403, 413 (5th Cir 2010). The Fifth Circuit upheld the jury's verdict in holding that "the evidence did ***not*** compel a finding of likelihood of confusion under the relevant Fifth Circuit law." *Id*. at 414 (emphasis added).

Abbott also inappropriately relies the Ninth Circuit's three factor test from *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173 (9th Cir.2007), a rule that the Fifth Circuit has expressly rejected. Abbott claims that the Fifth Circuit "pondered" the Ninth Circuit's *Perfume Bay* test in *College Network* and then attempts to apply the Ninth Circuit's test to this case. *See* Dkt. 9 at 8. However, this analysis is inappropriate as *College Network* court explicitly stated that "the Fifth Circuit has never adopted this rule," and rejected its application.

In sum, Abbott fails to cite any legal authority that supports its theory of infringement liability or that controverts the numerous cases supporting dismissal Abbott's infringement claim. As such, Abbott's trademark infringement claim should be dismissed with prejudice.

**C. Abbott's Tortious Interference Claim Still Fails to State a Claim.**

Abbott fails to assert any argument or authority that would save its tortious interference claim from dismissal. Abbott attempts to distinguish *Nano-Proprietary v. Canon* based on the fact that *Nano* only involved one prospective customer, while Abbott's claim involves many allegedly prospective customers. But this is a distinction without difference. The number of prospective customers at issue does not change the elements of a tortious interference claim under Texas law. This is evident from the fact that Fifth Circuit required the exact same elements for the tortious interference claim involving numerous potential customers in *College Network*. *See College Network*, 378 Fed. Appx. at 413 ("[A] plaintiff must show a 'reasonable probability' of a contractual relationship that extends beyond 'mere negotiations' with a prospective customer.") (citations omitted).

Abbott's Petition does not, and cannot, satisfy the reasonable probability element required to support a tortious interference claim. Abbott attempts to cure this deficiency by claiming that it is "possible" that some of the internet users who viewed AILC's website were "actual clients" who had signed contracts with Abbott. Dkt. 9 at 9. However, this allegation does not appear anywhere

in Abbott's Petition. Instead, Abbott's Petition merely makes the conclusory allegation that "third-parties who search for Plaintiff's trademarks in search engines are the Plaintiff's Prospective Clients, as it is reasonably certain that many of these third-parties will retain Plaintiff's services." Petition, ¶ 10. Because this conclusory allegation fails to establish a reasonable probability of a contractual relationship, which is an essential element of Abbotts' tortious interference claim, Abbott's tortious interference claim should be dismissed.

Abbott's argument that AILC engaged in some independently tortious conduct also falls flat. Abbott's argument appears to be that AILC's use of a trade name is somehow deceptive and independently tortious because lawyers are prohibited from using trade names under the Texas Disciplinary Rules of Conduct. This argument is puzzling because Abbott correctly points out more than once that AILC is *not* a law firm and is therefore *not* subject to the prohibition on trade names in the Texas Disciplinary Rules of Conduct. *See* Dkt. 9 at 6 ("AILC is a non-attorney entity not bound by the Texas state Bar rules of ethics, which forbid a lawyer or law firm from using trade names. Tex. Bar. R. 7.01."), 9 ("AILC is not a law firm at all."). Thus, it is entirely unclear how AILC's use of a trade name, which is perfectly permissible for a non-lawyer, is or could be independently tortious or unlawful. This fanciful argument is insufficient to support the element of independently tortious conduct that is required for its tortious interference claim. Abbott's tortious interference claim should be dismissed with prejudice.

**D**.  **Abbott's Barratry Claim Fails and Should Also Be Dismissed With Prejudice.**

Abbott does not address the legal failings of its barratry claim in its Response. The fact that Abbott does not attempt to defend its barratry claim implies its recognition that this claim fails as a matter of law because (1) Abbott lacks standing to assert such a claim, and (2) Abbott has not alleged that AILC engaged in any conduct that would incur civil liability for barratry. Accordingly, Abbott's barratry claim should be summarily dismissed with prejudice.

### III.   CONCLUSION

For all of the foregoing reasons, Defendant Accident Injury Legal Center asks this Court to dismiss Plaintiff's Petition in its entirety pursuant to Rule 12(b)(6).

DATE: April 6, 2020

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANT ACCIDENT INJURY LEGAL CENTER**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that this pleading was filed through the CM/ECF system of the United States District Court for the Northern District of Texas, and that true and correct copies of same were served by that system on all counsel of record.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann